IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MONICA PERKINS,<br><br>      Plaintiff,<br><br>v.<br><br>CITY OF DES MOINES, IOWA; DANA WINGERT, individually and in his capacity as Chief of Police of the Des Moines Police Department; RODELL NYDAM, individually and in his capacity as a Police Officer of the Des Moines Police Department; SCOTT NEWMAN, individually and in his capacity as a Police Officer of the Des Moines Police Department; and JASON TART, individually and in his official capacity as a deputy of the Polk County Sheriff's Office,<br><br>      Defendants. | No. 4:21-cv-00248-RGE-HCA<br><br><br>ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |

## I.    INTRODUCTION

Plaintiff Monica Perkins sues Defendants City of Des Moines, Iowa, Des Moines Police Department Chief of Police Dana Wingert, Des Moines Police Department Sergeant Rodell Nydam, Des Moines Police Department Officer Scott Newman, and Polk County Sheriff's Office Detective Jason Tart for violations of her rights under the United States Constitution and the Iowa Constitution, and for related claims under Iowa law. Perkins's claims arise from a May 31, 2020 incident during which Perkins was struck with a less-lethal impact round deployed by Detective Tart amid protesting and rioting related to the death of George Floyd.

Each Defendant moves for summary judgment on each of the claims Perkins asserts against them. For the reasons set forth below, the Court grants Defendants' motions for summary judgment as to each of Perkins's federal and state claims.

## II.    BACKGROUND

The following facts are either uncontested or, if contested, viewed in the light most favorable to Perkins, the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Protests related to the killing of George Floyd occurred in Des Moines, Iowa from May 29, 2020, through May 31, 2020, with rioting following the protests. Defs.' Joint Statement Undisputed Material Facts ¶ 1, ECF No. 57; Pl.'s Resp. Defs.' Joint Statement Undisputed Material Facts ¶ 1, ECF No. 64-1. At the time of the protests, Detective Tart was employed by the Polk County Sheriff's Office and assigned to the Metro STAR team—a joint unit between the Polk County Sheriff's Office and the Des Moines Police Department. ECF No. 57 ¶¶ 7, 9; ECF No. 64-1 ¶¶ 7, 9; Nydam Dep. 8:1–5, Defs.' App. Supp. Mots. Summ. J. 352, ECF No. 57-1. Detective Tart was certified on less-lethal munitions as part of the Metro STAR team. ECF No. 57 ¶ 8; ECF No. 64-1 ¶ 8; Tart Dep. 13:8–9, 21–25, ECF No. 57-1 at 240.

On May 31, 2020, protests were occurring in the parking lot of Merle Hay Mall. ECF No. 57 ¶ 10, ECF No. 64–1 ¶ 10. The protests at Merle Hay Mall turned to rioting and looting. ECF No. 57 ¶¶ 10, 12; ECF No. 64-1 ¶¶ 10, 12. As law enforcement officers approached the mall, crowds impeded their movement and threw water bottles at them. ECF No. 57 ¶ 16; ECF No. 64-1 ¶ 16. Officers were overwhelmed by the crowds and entered the mall to pursue looters. ECF No. 57 ¶¶ 18–19; ECF No. 64-1 ¶¶ 18-19. The Metro STAR team was ordered to Merle Hay Mall. ECF No. 57 ¶ 28; ECF No. 64-1 ¶ 28. The Metro STAR team consisted of Sergeant Nydam as commanding officer, Officer Newman as team leader, and Detective Tart. ECF No. 57 ¶¶ 20–21, 23; ECF No. 64-1 ¶¶ 20–21, 23. The Metro STAR team was utilizing a Bearcat, an armored vehicle with a turret on the roof in which an officer can stand in and view the surrounding area. ECF No. 57 ¶¶ 24–25; ECF No. 64-1 ¶¶ 24–25.

Upon arriving at Merle Hay Mall, Sergeant Nydam exited the Bearcat to discuss the situation with the police command staff. ECF No. 57 ¶ 29; ECF No. 64-1 ¶ 29. Sergeant Nydam was advised looters had infiltrated the mall. ECF No. 57 ¶ 33; ECF No. 64-1 ¶ 33. Dispersal orders had been issued. ECF No. 57 ¶ 32; ECF No. 64-1 ¶ 32. Crowds had grown after the orders had been given. ECF No. 57 ¶ 32; ECF No. 64–1 ¶ 32. Sergeant Nydam was directed to clear the mall parking lot and was authorized to use less-lethal force to accomplish the directive. ECF No. 57 ¶¶ 30–31; ECF No. 64-1 ¶¶ 30–31. After returning to the Bearcat, Sergeant Nydam informed the Metro STAR team they were to clear the parking lot using less-lethal munitions. ECF No. 57 ¶ 34; ECF No. 64-1 ¶ 34. The less-lethal munitions available to the Metro STAR team included tear gas and impact rounds, which are projectiles with sponge tips. ECF No. 57 ¶¶ 35–36; ECF No. 64-1 ¶¶ 35–36.

The Metro STAR team then drove around the parking lot with Detective Tart deploying less-lethal munitions from the Bearcat's turret to clear the crowd. ECF No. 57 ¶¶ 37–38; ECF No. 64-1 ¶¶ 37–38. The Metro STAR team first cleared the area near the mall, then moved to other parts of the parking lot closer to Merle Hay Road. ECF No. 57 ¶¶ 46–47; ECF No. 64-1 ¶¶ 46–47. Some people left the mall parking lot and dispersed from the area. ECF No. 57 ¶ 48; ECF No. 64-1 ¶ 48. Others moved across the street to other parking lots. *Id.* Activity in the mall parking lot was brought under control, but criminal activity and looting began occurring at nearby stores. ECF No. 57 ¶ 55 (citing Nydam Dep. 62:6–21, ECF No. 57-1 at 406); ECF No. 64-1 ¶ 55 (denying "to the extent criminal activity was happening in the area at the time [Detective] Tart used force against Perkins"); Nydam Dep. 62:6–63:7, ECF No. 57-1 at 406–07 (testifying that after the Merle Hay Mall parking lot was clear, looting eventually occurred at the AT&T store, Verizon store, and a pawn shop across the street from the parking lot).

That same day, Perkins's daughter picked Perkins up in a black Chevrolet Trailblazer and

the two attended a vigil for George Floyd at Union Park in Des Moines. ECF No. 57 ¶¶ 58–59, 63; ECF No. 64-1 ¶¶ 58–59, 63. Perkins's daughter's dog was also with them. ECF No. 57 ¶¶ 61, 76; ECF No. 64-1 ¶¶ 61, 76. After the vigil, Perkins and her daughter decided to go to the Popeyes Chicken on Merle Hay Road. ECF No. 57 ¶¶ 62, 74–75; ECF No. 64-1 ¶¶ 62, 74–75. Upon arriving in the Merle Hay Mall area, Perkins and her daughter noticed the large crowds and looting. ECF No. 57 ¶¶ 65–66; ECF No. 64-1 ¶¶ 65–66. They also observed or heard tear gas being deployed and noted the police had a SWAT presence. ECF No. 57 ¶¶ 68, 70; ECF No. 64-1 ¶¶ 68, 70. While driving north on Merle Hay Road, Perkins stated, "They got every cop car in Des Moines, Iowa on Merle Hay [Road]," while Perkins's daughter stated, "Dang, they're over here trying to rob the bank." ECF No. 57 ¶¶ 71–73; ECF No. 64-1 ¶¶ 71–73 (admitting the statements were made, but denying the bank was being robbed).

When Perkins and her daughter arrived at the Popeyes Chicken, they were told the restaurant was closing because of violence in the area. ECF No. 57 ¶ 74; ECF No. 64-1 ¶ 74. They then returned to Merle Hay Road driving south, stopping at the intersection of Merle Hay Road and one of the entrances to the mall parking lot. ECF No. 57 ¶¶ 75, 79; ECF No. 64-1 ¶¶ 75, 79. At the intersection they interacted with Officer Alycia Peterson, whose vehicle was blocking that entrance to the mall parking lot. ECF No. 57 ¶¶ 83, 85; ECF No. 64-1 ¶¶ 83, 85. An individual named Joshua Cochran was also driving south on Merle Hay Road in a gray Chevrolet Silverado. ECF No. 57 ¶ 77; ECF No. 64-1 ¶ 77. As Cochran approached the intersection where Perkins and her daughter were stopped, Cochran observed Perkins's daughter's Trailblazer blocking his lane. ECF No. 57 ¶ 81–82; ECF No. 64-1 ¶¶ 81–82; Cochran Dep. 9:10–10:15, ECF No. 57-1 at 521–22.

Cochran honked his horn at Perkins and her daughter and told them to get out of the road. ECF No. 57 ¶ 86; ECF No. 64-1 ¶ 86. Perkins and her daughter then began arguing with Cochran,

with the three shouting expletives at each other and Cochran making racist comments. ECF No. 57 ¶¶ 89, 91; ECF No. 64-1 ¶¶ 89, 91. Perkins complained to Officer Peterson that Cochran was saying racist things. ECF No. 57 ¶ 92. Officer Peterson instructed Perkins and her daughter not to let their dog out of the car. ECF No. 57 ¶ 93; ECF No. 64-1 ¶ 93. In the audio from Officer Peterson's dashcam, Officer Peterson can be heard repeatedly saying, "Don't let your dog out." Peterson Dashcam 13:00–08, ECF No. 57-1 at 651. On the audio, Officer Peterson can be heard stating, "Alright, get in your car. Get in your car, guys. Get in your car." *Id.* 13:10–19.[1]

Perkins and her daughter then continued driving south on Merle Hay Road. ECF No. 57 ¶ 95; ECF No. 64-1 ¶ 95. Cochran also continued driving south, first driving behind Perkins and her daughter, then pulling into the next lane in an attempt to go around them. ECF No. 57 ¶¶ 97, 99; ECF No. 64-1 ¶¶ 97, 99. Both cars then came to a stop at the next intersection, with Perkins's daughter's Trailblazer stopped in the far-right lane closest to the mall parking lot and Cochran's Silverado stopped in the middle lane approximately one car-length behind the Trailblazer. ECF No. 57 ¶¶ 103–04; ECF No. 64-1 ¶¶ 103–04. Perkins's daughter, who was driving the Trailblazer, got out of the car and began filming Cochran. ECF No. 57 ¶ 106; ECF No. 64-1 ¶ 106.

Around this time, the Bearcat was driving north through the mall parking lot near Merle Hay Road. ECF No. 57 ¶ 110; ECF No. 64-1 ¶ 110. The video evidence shows the Bearcat sitting stationary in the southeast corner of the mall parking lot approximately thirty seconds before Perkins and her daughter stop at the intersection. Ward Dashcam 1:00:00–33, ECF No. 57-1 at 656. The Bearcat then drives north towards a group of individuals standing in the parking lot. *Id.*

---

[1] Perkins denies Officer Peterson ordered her and her daughter to get back in their car, ECF No. 57 ¶ 94; ECF No. 64-1 ¶ 94, and testified neither she nor her daughter were outside of the Trailblazer. Perkins Dep. 112:14–25, ECF No. 57-1 at 104. She testified, however, that she "opened the door to talk to [Officer Peterson]" and was instructed to "[m]ove along." *Id.* 111:7–18; 112:24–113:5, ECF No. 57–1 at 103–05.

1:00:10–30. The group begins running in the opposite direction of the Bearcat along Merle Hay Road. *Id.* The Bearcat then continues driving north through the parking lot, with Detective Tart deploying a tear-gas cannister in the vicinity of a protestor standing near the parking lot. *Id.* 1:00:30–57; Pl.'s Statement Additional Material Facts Resist. Defs.' Mots. Summ. J. ¶¶ 16–18, ECF No. 64-2; Defs.' Joint Response Pl.'s Statement Additional Material Facts ¶¶ 16–18, ECF No. 76-1. The video evidence shows that approximately ten seconds after the tear-gas cannister is deployed, Detective Tart fired a single impact round. Ward Dashcam 1:00:50–1:01:07, ECF No. 57-1 at 656; ECF No. 57 ¶ 111; ECF No. 64-1 ¶ 111. The impact round struck Perkins in her left hand, causing her finger to break. ECF No. 57 ¶ 113; ECF No. 64-1 ¶ 113; ECF No. 64-2 ¶ 1; ECF No. 76-1 ¶ 1.

During her deposition, Perkins testified she had one foot outside her daughter's car at the time she was struck with the impact round. Perkins Dep. 28:11–29:13, ECF No. 57-1 at 54–55. Specifically, she testified she had opened her door, stepped a foot out, dropped her cell phone, went to retrieve her cell phone, looked up and saw that the Bearcat had moved in her direction, and was struck by the impact round. *Id.* In her brief in support of her resistance to Detective Tart's motion for summary judgment, Perkins asserts she was struck by the impact round while walking away from Detective Tart. Pl.'s Brief Resist. Def. Tart's Mot. Summ. J. 4, ECF 70 (citing ECF No. 64-2 ¶ 3); ECF No. 64-2 ¶ 3 (citing Hunter Dashcam 56:40–43). The video evidence Perkins cites in support for her assertion—which is obstructed in part by traffic—shows an individual walking in the street from the passenger side of Perkins's daughter's Trailblazer towards Cochran's Silverado, Hunter Dashcam 56:20–39, ECF No. 57-1 at 653, then briefly walking back towards the passenger side of the Trailblazer in the general direction of the approaching Bearcat, *id.* 56:40–42, then walking back towards Cochran's Silverado for approximately two seconds, at which time Detective Tart can be heard deploying the impact round, *id.* 56:42–45. The video shows the

individual reaching towards the ground a few seconds later before returning to the passenger side of the Trailblazer, at which time the Trailblazer begins driving away. *Id.* 56:46–57:06.

On June 22, 2021, Perkins filed the present suit in the Iowa District Court for Polk County, alleging various federal and state constitutional claims as well as state common law claims against Officer Doe, the City of Des Moines, and Chief Wingert. Defs.' App. Supp. Notice Removal 1–14, ECF No. 1-1. On August 24, 2021, Defendants removed the action to federal court. Defs.' Notice Removal 1–2, ECF No. 1. Thereafter, Perkins filed an amended complaint with leave from the Court. Am. Compl., ECF No. 8; Text Order Granting Mot. to Am., ECF No. 7. Perkins's amended complaint alleged an excessive force claim under the Fourth and Fourteenth Amendments against Detective Tart in his individual capacity (Count I), an excessive force claim under article I, section 8 of the Iowa Constitution against Detective Tart in his individual and official capacity (Count II), a *Monell* liability claim against the City of Des Moines and Chief Wingert (Count III), a state common law claim for negligent hiring, training, and supervision against the City of Des Moines and Chief Wingert (Count IV), a state common law respondeat superior claim against the City of Des Moines and Chief Wingert (Count V), a substantive due process claim under the Fourteenth Amendment against Detective Tart in his individual capacity (Count VI), a substantive due process claim under article I, section 9 of the Iowa Constitution against Detective Tart in his individual and official capacity (Count VII), and a Fourth Amendment failure-to-intervene claim against Sergeant Nydam and Officer Newman (Count VIII). *Id.* ¶¶ 27–99.

The City of Des Moines and Chief Wingert filed a motion to dismiss Perkins's negligent hiring, training, and supervision and respondeat superior claims. Defs.' Mot. Dismiss Counts IV and V, ECF No. 11. Detective Tart separately filed a motion to dismiss Perkins's claims under the Iowa Constitution. Def. Tart's Mot. Dismiss Counts II and VII, ECF No. 19. The Court denied the

City of Des Moines and Chief Wingert's motion to dismiss and granted Detective Tart's motion to dismiss in part, dismissing the state constitutional claims alleged against Detective Tart in his individual capacity.  Order Re: Defs.' City of Des Moines and Chief Wingert's Mot. Dismiss Counts IV and V and Defendant Tart's Mot. Dismiss Counts II and VII 14–15, ECF No. 32.

Detective Tart now moves for summary judgment on each of the remaining claims alleged against him. Def. Tart's Mot. Summ. J. 1–3, ECF No. 53. Perkins resists. Pl.'s Resist. Defs.' Mots. Summ. J. 1–2, ECF No. 64. The City of Des Moines, Chief Wingert, Sergeant Nydam, and Officer Newman similarly move for summary judgment on each of the claims asserted against them. Defs.' Mot. Summ. J. 1–2, ECF No. 55. Perkins resists in part. *See* ECF No. 64 at 1–2; Pl.'s Br. Resist. Defs.' Mot. Summ. J., ECF No. 69 (failing to respond to Defendants' motion to dismiss Counts III, IV, or V). No party requests a hearing. ECF No. 53 at 1; ECF No. 55 at 1; ECF No. 64 at 1. The Court decides the motions without oral argument, finding the parties' briefings and exhibits adequately present the issues. *See* LR 7(c); Fed. R. Civ. P. 78(b). Having considered the parties' briefs and exhibits, the Court grants Defendants' motions for summary judgment as set forth below.

Additional facts are set forth below as necessary.

## III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the Court must grant a party's motion for summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists where the issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will

not be counted." *Id.* at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and the moving party is entitled to judgment as a matter of law. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042–43 (8th Cir. 2011) (en banc) (quoting *Ricci v. DeStefano*, 557 U.S. 577, 586 (2009)).

When analyzing whether a party is entitled to summary judgment, a court "may consider only the portion of the submitted materials that is admissible or useable at trial." *Moore v. Indehar*, 514 F.3d 756, 758 (8th Cir. 2008) (quoting *Walker v. Wayne Cnty.*, 850 F.2d 433, 434 (8th Cir. 1988)). The nonmoving party "receives the benefit of all reasonable inferences supported by the evidence, but has 'the obligation to come forward with specific facts showing that there is a genuine issue for trial.'" *Atkinson v. City of Moutain View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cnty.*, 621 F.3d 740, 743 (8th Cir. 2010)). "In order to establish the existence of a genuine issue of material fact, a plaintiff may not merely point to unsupported self-serving allegations." *Anda v. Wickes Furniture Co., Inc.*, 517 F.3d 526, 531 (8th Cir. 2008) (cleaned up). "[A] court should [also] not adopt [a party's] version of the facts for purposes of . . . summary judgment" if the party's version of the facts "is blatantly contradicted by the [video evidence]." *Scott v. Harris*, 550 U.S. 372, 381–82 (2007); *see also Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010 ("Because the videotape clearly contradicts the version of the story told by [the plaintiff], we must 'view the facts in the light depicted by the videotape.'" (alteration in original) (quoting *Scott*, 550 U.S. at 381)). "The plaintiff must substantiate [the] allegations with sufficient probative evidence that would permit a finding in [their] favor." *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008) (internal quotation marks and citation omitted).

## IV.    DISCUSSION

The Court first addresses Defendants' motions for summary judgment on Perkins's federal claims. The Court then addresses Defendants' motions for summary judgment on Perkins's state

claims. For the reasons discussed below, the Court grants Defendants' motions as to each of Perkins's claims.

    **A.    Federal Claims**

    Perkins alleges four claims pursuant to 42 U.S.C. § 1983, including an excessive force claim under the Fourth and Fourteenth Amendments against Detective Tart (Count I); a substantive due process claim under the Fourteenth Amendment against Detective Tart (Count VI); a failure-to-intervene claim against Sergeant Nydam and Officer Newman (Count VIII); and a *Monell* liability claim against the City of Des Moines and Chief Wingert (Count III). ECF No. 8 ¶¶ 27–36, 46–58, 74–81, 89–99. Detective Tart moves for summary judgment on Perkins's excessive force and substantive due process claims, arguing Perkins was never seized under the Fourth Amendment, his conduct does not shock the conscience under the Fourteenth Amendment, and he is otherwise entitled to qualified immunity. Def. Tart's Br. Supp. Mot. Summ. J. 15–20, ECF No. 60.  Sergeant Nydam and Officer Newman move for summary judgment on Perkins's failure-to-intervene claim, arguing they cannot be held liable for a failure to intervene absent a constitutional violation by Detective Tart. Defs.' Br. Supp. Mot. Summ J. 8–14, 21–24, 25–27, ECF No. 61. The City of Des Moines and Chief Wingert move for summary judgment on Perkins's *Monell* liability claim, arguing they also cannot be held liable absent an underlying constitutional violation. *Id.* 14–15, 27–28.

    For the reasons set forth below, the Court finds Defendants are entitled to summary judgment on each of Perkins's federal claims. Detective Tart did not violate Perkins's rights under the Fourth Amendment as she was never seized. Further, Detective Tart is entitled to qualified immunity on Perkins's Fourth Amendment claim as it was not clearly established at the time that Detective Tart's conduct constituted a seizure. Detective Tart also did not violate Perkins's rights under the Fourteenth Amendment because his conduct does not shock the conscience. In addition,

Detective Tart is entitled to qualified immunity on Perkins's Fourteenth Amendment claims as it was also not clearly established at the time that Detective Tart's conduct shocked the conscience. Because Detective Tart did not violate Perkins's rights under the Fourth or Fourteenth Amendment—the only claims Perkins asserts against Detective Tart under the United States Constitution—Sergeant Nydam, Officer Newman, Chief Wingert, and the City of Des Moines are entitled to summary judgment because neither a failure-to-intervene nor *Monell* liability claim can be maintained absent an underlying constitutional violation.

        1.      Fourth Amendment Excessive Force Claim against Detective Tart

Perkins alleges Detective Tart violated her Fourth Amendment right to be free from excessive force when she was struck with the impact round. ECF No. 8 ¶¶ 27–36. Detective Tart moves for summary judgment, arguing Perkins's Fourth Amendment claim fails as a matter of law as she was never seized. ECF No. 60 at 15–16. Alternatively, Detective Tart argues he is entitled to qualified immunity because it was not clearly established at the time of the incident that striking an individual with an impact round constituted a seizure. *Id.* at 19–20. Perkins resists, arguing the evidence raises a genuine issue of material fact as to whether she was seized when she was struck with the impact round. ECF No. 70 at 4–7. She argues Detective Tart is also not entitled to qualified immunity because it was clearly established at the time of the incident that striking an individual with an impact round constitutes a seizure. *Id.* at 7–8. The Court addresses whether a seizure occurred and whether Detective Tart is entitled to qualified immunity in turn.

        a.      Seizure

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend IV. "To establish a Fourth Amendment violation, the claimant must demonstrate a seizure occurred and the seizure was unreasonable." *Quraishi v. St. Charles Cnty, Mo.*, 986 F.3d 831, 839 (8th Cir. 2021) (internal

quotation marks and citation omitted). If a claimant has not been seized, no Fourth Amendment violation has occurred. *See Steed, by and through Steed v. Mo. State Highway Patrol*, 2 F.4th 767, 770 (8th Cir. 2021) (affirming dismissal of the plaintiff's Fourth Amendment claim because the plaintiff was not seized).

Here, Perkins alleges she was seized when she was struck with the impact round. ECF No. 8 ¶¶ 30, 32. Detective Tart denies that Perkins was seized, asserting the Eighth Circuit has determined force used to disperse protestors does not constitute a seizure. ECF No. 60 at 15–16 (citing *Quraishi*, 986 F.3d at 840; *Welch v. Dempsey*, No. 4:20-cv-00235-SMR-HCA, 2021 WL 5206138 (S.D. Iowa Nov. 4, 2021)). He argues the evidence "substantiates that [his] sole intent was to quell the threat he perceived from [Perkins] and alter her behavior." *Id.* at 16 (citations omitted). In support of his argument, Detective Tart points to evidence that Perkins was never arrested, that neither he nor any other officer attempted to arrest Perkins or stop her from leaving the scene, and that Perkins left the scene after she was struck by the impact round. *Id.* (citing ECF No. 57 ¶ 154). Perkins responds that "[t]he Eighth Circuit has long recognized being shot as a seizure." ECF No. 70 at 5 (citing *Cole v. Bone*, 993 F.2d 1328, 1331 (8th Cir. 1993); *Moore v. Indehar*, 514 F.3d 756, 761–62 (8th Cir. 2008)). She argues the record—including evidence that Detective Tart did not order her to disperse or leave and she was struck by the impact round while moving away from Detective Tart—establishes a question of fact as to whether she was seized. *Id.* at 5–6.

"[T]he 'seizure' of a 'person' . . . can take the form of 'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person." *Torres v. Madrid*, 592 U.S. 306, 311 (2021) (second alteration in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968)). The Supreme Court addressed the contours of a seizure by force in *Torres*. There, the question before the Court was whether an officer's use of force in an attempt to apprehend a suspect

constituted a seizure when the force applied failed to stop the suspect. *See id.* at 311, 317–18. In finding such force constituted a seizure, the Court held a seizure by force "requires the use of force *with intent to restrain.* Accidental force will not qualify. Nor will force intentionally applied for some other purpose." *Id.* at 317 (citations omitted) (noting the Court's holding was limited to force used to apprehend and did not consider "matters not presented" such as "pepper spray, flash-bang grenades, lasers, and more"). The Court also stated, "the appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain." *Id.* at 317 (emphasis in original) (citations omitted).

"*Torres* involved force used to *apprehend* a suspect, and did not address whether force used only to compel departure from an area constitutes a seizure." *Dundon v. Kirchmeier*, 85 F.4th 1250, 1256 (8th Cir. 2023) (citing *Torres*, 592 U.S. at 316–17). Applying *Torres*, the Eighth Circuit has "recognized a potential distinction between force used with intent to apprehend [or restrain] and force used with intent to disperse or repel." *Id.* (citing *Quraishi*, 986 F.3d at 839–40; *Martinez v. Sasse*, 37 F.4th 506, 510 (8th Cir. 2022)). In *Quraishi*, for example, several reporters asserted they were seized under the Fourth Amendment when they were tear-gassed by an officer while reporting on a protest. 986 F.3d at 834. The reporters argued they were restrained by the tear gas because they could not stay in their chosen location. *Id.* at 840. The Eighth Circuit disagreed, stating, "the reporters' freedom to move was not terminated or restricted. They were dispersed." *Id.* (finding the officer was entitled to qualified immunity because it was not clearly established that his conduct constituted a seizure).

Under *Torres* and *Quraishi*, an individual is not seized under the Fourth Amendment when an officer objectively manifests an intent to disperse rather than restrain. *See Welch*, 2021 WL 5206138, at *4 (finding "no evidence of a seizure or an attempted seizure by [the officer]" as the evidence indicated the officer "intended to disperse [the claimant] but not to

seize her" (discussing *Torres*, 592 U.S. at 317; *Quraishi*, 986 F.3d at 840)); *Dreith v. City of St. Louis*, No. No. 4:18CV1565 JCH, 2021 WL 4148324, at *5 (E.D. Mo. Sept. 13, 2021) (finding the protestors were not seized at the time they were tear gassed because the officer's conduct did not suggest an intent to restrain (citing *Quraishi*, 986 F.3d at 839)), *vacated in part on other grounds*, 55 F.4th 1145 (8th Cir. 2022); *Dundon v. Kirchmeier*, 577 F.Supp.3d 1007, 1040 (D.N.D. 2021) (finding no seizure occurred where "officers objectively manifested an intent to move protestors away . . . , get them to disperse, and control the crowd"), *aff'd on other grounds*, *Dundon*, 85 F.4th. at 1257.

Here, the record contains no evidence from which a reasonable jury could conclude an objective intent to restrain rather than disperse Perkins. *See Brendlin v. California*, 551 U.S. 249, 260–61 (2007) ("The intent that counts under the Fourth Amendment is the intent [that] has been conveyed to the person confronted." (alteration in original) (internal quotation marks and citation omitted)). Upon arriving in the Merle Hay Mall area, Perkins was aware of the large crowds and looting going on in the area. ECF No. 57 ¶¶ 65–66; ECF No. 64-1 ¶¶ 65–66. She was also aware law enforcement officers and a SWAT team were present in the area and that tear gas was being deployed. ECF No. 57 ¶¶ 68, 70, 72 ("They got every cop car in Des Moines, Iowa on Merle Hay [Road]."); ECF No. 64-1 ¶¶ 68, 70, 72. When Perkins attempted to speak with one of the officers whose car was blocking an entrance to the mall parking lot, she was instructed to "[m]ove along." Perkins Dep. 111:7–18, ECF No. 57-1 at 103; ECF No. 57 ¶ 85; ECF No. 64-1 ¶ 85. Thus, Perkins was aware of the volatile situation going on around her and had been instructed by an officer to leave the area.

Nevertheless, Perkins exited her daughter's car shortly after interacting with the officer and began walking back and forth in the street amid traffic in the lane adjacent to the mall parking lot. Hunter Dashcam 56:20–45, ECF No. 57-1 at 653. It was at this point—with Perkins walking back

and forth through the street amid traffic—that the Bearcat drove by Perkins's location and Detective Tart deployed the impact round that struck Perkins. *Id.* at 56:30–45. Perkins argues the fact she was struck "while moving away from [Detective] Tart and the parking lot" demonstrates Detective Tart intended to restrain her. ECF No. 70 at 5 (citation omitted). Seconds before being struck by the impact round, however, Perkins was walking towards the Bearcat and mall parking lot. Hunter Dashcam 56:40–45, ECF No. 57-1 at 653 And unlike the cases Perkins cites for support, there is no evidence Perkins was moving away from the mall parking lot in an attempt to flee or run away from Detective Tart or another officer. *See Cole*, 993 F.2d at 1330–32 (finding an individual engaged in a high-speed chase was seized the moment he was shot by an officer); *Moore*, 514 F.3d at 759–62 (finding a genuine issue of material fact as to whether an individual was seized when he was shot while running away from officers on foot).

Perkins also argues the fact Detective Tart did not order her to disperse prior to deploying the impact round demonstrates he intended to restrain her. ECF No. 70 at 5 (citation omitted); *but see* ECF No. 57 ¶ 136 (containing Detective Tart's assertion he did order Perkins to disperse prior to deploying the impact round). Even assuming for purposes of summary judgment that Detective Tart did not order Perkins to disperse prior to deploying the impact round or that Perkins did not hear Detective Tart issue such an order, Perkins had already been instructed by another officer to "[m]ove along" from the area. Perkins Dep. 111:7–18, ECF No. 57-1 at 103; *see also* Peterson Dashcam 13:00–19, ECF No. 57-1 at 651 (containing Officer Peterson's statements, "Alright, get in your car. Get in your car, guys. Get in your car"). Finally, Perkins asserts that other than the fact she was walking away from Detective Tart and that he did not order her to disperse, "the only objectively manifested conveyance of [Detective] Tart's intent" was the fact he struck her with the impact round. ECF No. 70 at 5. That Perkins was struck by the impact round fails to indicate, however, why Detective Tart deployed the impact round, including whether he intended

to restrain or disperse her or whether he intended to strike her with the impact round at all. *Cf.*
*Torres*, 592 U.S. at 317 ("Accidental force will not qualify. Nor will force intentionally applied
for some other purpose.").

Furthermore, none of the events after Perkins was struck by the impact round objectively
manifest an intent to restrain. Perkins was not arrested after being struck. Instead, she drove
away in her daughter's car unimpeded by law enforcement. Hunter Dashcam 56:46–57:06, ECF
No. 57-1 at 653; ECF No. 57 ¶¶ 149–51; ECF No. 64-1 ¶¶ 149–51; *see Dreith*, 2021 WL 4148324,
at *5 (finding the plaintiff had not been seized in part because she "was not arrested or detained in
any capacity" and left the protest after being sprayed with tear gas); *cf. Dundon*, 577 F.Supp.3d at
1039 (collecting cases where plaintiffs had been seized because they had no means of dispersing
after less-lethal munitions were deployed against them).

Based upon such evidence, no reasonable jury could conclude Detective Tart objectively
manifested an intent to restrain Perkins at the time she was struck by the impact round such
that she was seized for purposes of the Fourth Amendment. *Cf. Torgerson*, 643 F.3d at 1042–43;
*Torres*, 592 U.S. at 317; *Quraishi*, 986 F.3d at 839–40. Because the Fourth Amendment is
implicated only when a seizure has occurred, Perkins's Fourth Amendment excessive force
claim fails as a matter of law. *Cf. Steed*, 2 F.4th at 770.

b.    Qualified Immunity

Detective Tart argues that even if his conduct did constitute a seizure, he is entitled to
qualified immunity because it was not clearly established at the time that the use of a less-lethal
impact round in such a manner constitutes a seizure. ECF No. 60 at 20. Perkins resists, arguing it
was clearly established at the time of the incident that Detective Tart's conduct constituted a

seizure. ECF No. 70 at 7–8.[2]

"Qualified immunity shields [an officer] from civil damages liability if his conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Quraishi*, 986 F.3d at 835 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A two-step inquiry applies: (1) whether the [plaintiff] ha[s] alleged facts to show a violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct." *Id.* (citation omitted). "To be clearly established, the contours of the right must be sufficiently clear that a reasonable official would [have understood] that what he is doing violates that right." *Id.* (alteration in original) (internal quotation marks and citation omitted). "The state of the law at the time . . . must give officials fair warning their conduct was unlawful," meaning "[t]here must be precedent, controlling authority, or a robust consensus of cases of persuasive authority." *Id.* (internal quotation marks and citations omitted).

Here, Perkins asserts "[t]he right of a non-fleeing or resisting individual who posed little or no threat to anyone's safety, who never received commands to remove herself to be free from the force used against them is established." ECF No. 70 at 8 (quoting *Johnson v. Carroll*, 658 F.3d 819, 828 (8th Cir. 2011)) (also citing *Baude v. Leyshock*, 23 F.4th 1065, 1073 (8th Cir. 2022)) (mentioning *Mitchell v. Kirchmeier*, 28 F.4th 888, 898 (8th Cir. 2022)). The Eighth Circuit, however, has found the cases Perkins cites in support of her assertion are "inapposite" to whether force used to disperse an individual constitutes a seizure. *Dundon*, 85 F.4th at 1256 (noting the

---

[2] Perkins also argues the Court should decline to apply the doctrine of qualified immunity. ECF No. 70 at 13–17 (setting forth arguments as to why the doctrine of qualified immunity "should not continue"); *see also* Pl.'s Br. Supp. Resist. Defs.' Mot. Summ J. 18–22, ECF No. 69. The Supreme Court and Eighth Circuit continue to adhere to the doctrine of qualified immunity. *See Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 7–8 (2021) (granting qualified immunity to the petitioner); *Peterson v. Heinen*, 89 F.4th 628, 633–34, 836–40 (8th Cir. 2023) (granting qualified immunity to some of the petitioners). This Court will do the same. *Cf. id.*

officers in those cases "used force to apprehend a suspect" (citing *Baude*, 23 F.4th at 1070; *Johnson*, 658 F.3d at 823–24) (discussing *Mitchell*, 28 F.4th at 894)). Furthermore, even if Detective Tart had objectively manifested an intent to restrain Perkins as opposed to disperse her, these cases would still fail to provide Detective Tart notice that his conduct constituted a seizure because the individuals in each of those cases were ultimately arrested—further evincing a seizure had occurred. *See Johnson*, 658 F.3d at 823–24; *Baude*, 23 F.4th at 1070; *Mitchell*, 28 F.4th at 894.

Absent "precedent, controlling authority, or a robust consensus of cases of persuasive authority" showing it was clearly established as of May 2020 that striking an individual who was walking back and forth in a street during a protest with a single, less-lethal impact round constituted a seizure, the Court finds Detective Tart is entitled to qualified immunity on Perkins's Fourth Amendment claim. *Quraishi*, 986 F.3d at 835, 840 (internal quotation marks and citation omitted) (finding it was not clearly established as of 2014 that tear-gassing reporters at the site of a protest constituted a seizure); *cf. Dundon*, 85 F.4th at 1257 (finding it was not clearly established as of 2016 that use of force to disperse a crowd was a seizure); *Martinez*, 37 F.4th at 510 (finding as of 2018 it was not clearly established that a push used to repel an individual from entering a building constituted a seizure).

On this alternative ground, the Court grants Detective Tart's motion for summary judgment as to Perkins's Fourth Amendment excessive force claim.

### 2.    Fourteenth Amendment Claims against Detective Tart

Perkins alleges Detective Tart violated her Fourteenth Amendment right to substantive due process when he struck her with the impact round. ECF No. 8 ¶¶ 74–81. She separately alleges Detective Tart's conduct violated her Fourteenth Amendment right to be free from excessive force. *Id.* ¶¶ 27–36. Detective Tart moves for summary judgment, arguing he did not

violate Perkins's Fourteenth Amendment rights as his conduct does not shock the conscience. ECF No. 60 at 16–19. He further argues that even if his conduct did shock the conscience, he is entitled to qualified immunity. *Id.* at 19–20. Perkins resists, arguing the evidence is sufficient to find Detective Tart acted with deliberate indifference and otherwise intended to harm her without a lawful purpose when he struck her with the impact round. ECF No. 70 at 8–13. She argues Detective Tart is not entitled to qualified immunity because his conduct was so far outside the scope of his authority that it was clear he was violating her rights under the Fourteenth Amendment. *Id.* at 13 (citations omitted).

The Court first addresses the fact Perkins has asserted two separate Fourteenth Amendment claims, finding the same substantive due process analysis applies to both claims. The Court next addresses the level of culpability to be applied to Detective Tart's conduct, finding the intent-to-harm standard applies. The Court then addresses whether Detective Tart's conduct shocks the conscience, finding it does not. Finally, the Court addresses whether Detective Tart is entitled to qualified immunity on Perkins's Fourteenth Amendment claims, concluding Detective Tart is entitled to qualified immunity.

a.    Perkins's Fourteenth Amendment claims

As noted above, Perkins alleges two separate claims against Detective Tart under the Fourteenth Amendment—one for violations of her right to be free from excessive force and one for violations of her right to substantive due process. ECF No. 8 ¶¶ 27–36, 74–81. Both claims are premised on the fact Detective Tart struck Perkins with the impact round. *See id.* ¶¶ 30, 77.

When "[t]he only constitutional claim . . . is whether [a government official's] actions resulted in a substantive due process violation under the Fourteenth Amendment," "a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the contemporary conscience." *Truong v.*

*Hassan*, 829 F.3d 627, 630–31 (8th Cir. 2016) (internal quotation marks and citations omitted). In analyzing whether an official's actions shock the conscience, courts must "first determine the level of culpability the § 1983 plaintiff must prove to establish that the [official's] conduct may be conscience shocking." *Id.* at 631. Courts must then determine whether the official's conduct was "so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism . . . that it amounted to a brutal and inhumane abuse of official power literally shocking the conscience." *Id.* (first and second omissions in original) (citations omitted).

Excessive force claims in turn are typically analyzed under the Fourth or Eighth Amendments. *See Graham v. Connor*, 490 U.S. 386, 394 (1989) ("In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishment." (citations omitted)). But not "all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). If a claimant's excessive force claim is not "covered by" the Fourth or Eighth Amendments the claimant may proceed under the Fourteenth Amendment. *Cf. Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998) (finding the claimant could proceed under the Fourteenth Amendment because they were not seized under the Fourth Amendment). Here, the Court has found Perkins was not seized under the Fourth Amendment. *See supra* Section IV.A.1.a. "[T]he Eighth Amendment proscription against cruel and unusual punishment, which applies only to convicted prisoners," also does not apply to Perkins. *Hott v. Hennepin Cnty, Minn.*, 260 F.3d 901, 905 (8th Cir. 2001). Perkins must therefore rely on the Fourteenth Amendment in support of her excessive force claim. *Cf. Lewis*, 523 U.S. at 843–44.

Excessive force claims under the Fourteenth Amendment are subject to the same substantive due process analysis applicable to other substantive due process claims against government officials. *Compare id.* at 843, 845–54 (finding "[s]ubstantive due process analysis is [] []appropriate . . . if [a plaintiff's] claim is [not] 'covered by' the Fourth Amendment" and analyzing whether the government official's conduct shocked the conscience under the intent-to-harm standard), *and Dundon*, 85 F.4th at 1255, 1257 (affirming dismissal of the claimants' Fourteenth Amendment excessive force claim because the claimants failed to demonstrate the officer's actions shocked the conscience (citing *Lewis*, 523 U.S. at 846–47)), *with Truong*, 829 F.3d at 630–31 (determining whether the government official's conduct shocked the conscience under the intent-to-harm standard when "the only constitutional claim" was "a substantive due process violation"). Accordingly, the Court applies the same substantive due process analysis to both of Perkins's Fourteenth Amendment claims. *Cf. Truong*, 829 F.3d at 630–31; *Lewis*, 523 U.S. at 845–54.

b.    Level of culpability

In analyzing whether an official's conduct shocks the conscience, courts must "first determine the level of culpability the § 1983 plaintiff must prove to establish that the defendant's conduct may be conscience shocking." *Truong*, 829 F.3d at 631. "Proof of intent to harm is usually required, but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold." *Id.* (citation omitted). The deliberate indifference standard "is sensibly employed only when actual deliberation is practical." *Id.* (citation omitted). "By contrast, the intent-to-harm standard most clearly applies 'in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation.'" *Id.* (quoting *Neal v. St. Louis Cnty. Bd. of Police Comm'rs*, 217 F.3d 955, 958 (8th Cir. 2000)). "Because the conscience-shocking standard is intended to limit substantive due

process liability, it is an issue of law for the judge." *Id.* (citations omitted).

Here, the intent-to-harm standard applies to Detective Tart's conduct because the circumstances under which Detective Tart was operating leading up to and at the time of his interaction with Perkins were rapidly evolving, fluid, and dangerous. *Cf. Truong*, 829 F.3d at 631. Upon arriving in the Merle Hay Mall area, the Metro STAR team was informed that individuals were looting stores within the mall and that, despite officers issuing dispersal orders, the crowd had continued to grow. ECF No. 57 ¶¶ 29, 32–33; ECF No. 64-1 ¶¶ 29, 32–33. The Metro STAR team was instructed to clear the mall parking lot and authorized to use less-lethal munitions. ECF No. 57 ¶¶ 30–31; ECF No. 64-1 ¶¶ 30–31. The Metro STAR team then drove around the parking lot in the Bearcat, with Tart deploying less-lethal munitions to disperse the crowd. ECF No. 57 ¶¶ 37–38; ECF No. 64-1 ¶¶ 37–38. As the officer stationed in the Bearcat turret, Detective Tart was more exposed to danger from the crowd than the other officers in the Bearcat. ECF No. 57 ¶ 54; ECF No. 64-1 ¶ 54. After clearing the portion of the parking lot closest to the mall, the Metro STAR team moved to the outer portions of the parking lot. ECF No. 57 ¶¶ 46–47; ECF No. 64-1 ¶¶ 46–47.

Perkins argues any dangerous or rapidly evolving situation involving the crowd had dissipated by the time she was hit by the impact round, as the Bearcat was under no threat from protestors and the parking lot "was under control at the time." ECF No. 70 at 12 (citations omitted). Less than a minute before Perkins was struck by the impact round, however, individuals were still present in the parking lot—despite the dispersal orders and despite Detective Tart deploying less-lethal munitions—including a group of individuals running through the parking lot in the opposite direction of the Bearcat. *See* Ward Dashcam 1:00:00–1:01:07, ECF No. 57-1 at 656. In addition, other individuals continued to gather across the street from the mall parking lot. ECF No. 57 ¶ 48; ECF No. 64-1 ¶ 48. Perkins asserts the individuals across the street did not create

a rapidly evolving, fluid, and dangerous situation because "the Bearcat was not patrolling" that area. ECF No. 70 at 12. Detective Tart needed to continue to monitor these individuals, however, to ensure they did not return to the mall parking lot or engage in other criminal activity. *See* ECF No. 57 ¶ 49 (noting the Metro STAR team "continued to patrol the parking lot to discourage people from returning"); ECF No. 64-1 ¶ 49. The fact protestors eventually looted the businesses across the street confirms Detective Tart needed to continue to monitor these individuals' presence. *See* Nydam Dep. 62:6–63:7, ECF No. 57-1 at 406–07 (testifying that after the parking lot was clear, looting eventually occurred at the AT&T store, Verizon store, and a pawn shop across the street from the parking lot).

The timeframe within which Detective Tart interacted with Perkins further shows that he did not have time for calm and reflective deliberation. *Cf. Truong*, 829 F.3d at 631. As noted by Perkins, Detective Tart used less-lethal force against another protestor "immediately before" firing the impact round that struck her. ECF No. 70 at 12. The video evidence shows Detective Tart deploying a tear-gas cannister as the Bearcat is driving through the mall parking lot adjacent to Merle Hay Road. Ward Dashcam 1:00:30–57, ECF No. 57-1 at 656. The Bearcat then continues driving through the parking lot, with Detective Tart firing the impact round approximately ten seconds later. *Id.* at 1:00:57–1:01:07. During these ten seconds, Perkins can be seen outside her daughter's car walking back and forth in the street. *Id.* The Court finds that in these ten seconds, Detective Tart had to make an "instant judgment" about how to react to Perkins and did not have time for calm and reflective deliberation. *Cf. Truong*, 829 F.3d at 632 (finding a bus driver's nine-minute interaction with a bus patron required him to make instant judgments and did not allow for calm and reflective deliberation).

Because the circumstances under which Detective Tart was operating at the time he struck Perkins with the impact round were rapidly evolving, fluid, and dangerous and he had to make an

instant judgment about how to respond to her conduct, the Court finds the intent-to-harm standard applies.

          c.      Intent to harm

Applying the intent-to-harm standard, Perkins has failed to set forth evidence demonstrating Detective Tart acted with a malicious or sadistic intent to harm her at the time he struck her with the impact round. *Cf. Truong*, 829 F.3d at 632. Rather, the evidence demonstrates Detective Tart utilized force "in a good faith effort to maintain or restore [order]" pursuant to his legitimate job responsibilities. *Whitley v. Albers*, 475 U.S. 312, 320–21 (citation omitted); *see also Truong*, 829 F.3d at 632 (finding the defendant "was not acting in a manner to maliciously or sadistically cause [the plaintiff] physical harm" but rather "[his] actions were related to his legitimate responsibilities")

Detective Tart was aware that dispersal orders had been issued, was instructed by his supervisors to clear the mall parking lot, and was authorized to use less-lethal munitions. ECF No. 57 ¶¶ 30–32; ECF No. 64-1 ¶¶ 30–32. Less than a minute before Detective Tart deployed the impact round, individuals were running through the parking lot adjacent to Merle Hay Road and congregating across the street. ECF No. 57 ¶¶ 47–48; ECF No. 64-1 ¶¶ 47–48; Ward Dashcam 1:00:00–33, ECF No. 57-1 at 656. Perkins was walking back and forth in Merle Hay Road in the lane adjacent to the mall parking lot when Detective Tart encountered her. Hunter Dashcam 56:20–45, ECF No. 57-1 at 653. While Perkins cites the fact that she was walking away from Detective Tart at the exact moment she was struck by the impact round, ECF No. 70 at 9, she was also walking in the direction of the Bearcat and the mall parking lot moments before being struck. Hunter Dashcam 56:40–45, ECF No. 57-1 at 653. Detective Tart fired a single, less-lethal round from approximately sixty feet away that struck Perkins in the hand, causing one of her fingers to break. ECF No. 57 ¶¶ 111–12; ECF No. 64-1 ¶¶ 111–12; ECF No. 64-2 ¶ 1. Such evidence, which

bears on "the need for the application of force, . . . the amount of force that was used, [and] the extent of the injury inflicted," fails to demonstrate Detective Tart deployed the impact round for a reason other than to maintain or restore order. *Whitley*, 475 U.S. at 321.

The additional evidence cited by Perkins also fails to demonstrate Detective Tart acted "maliciously and sadistically for the very purpose of causing harm." *Id.* at 320. Perkins cites Detective Tart's testimony that "99% of the people in the area 'had bad intentions' and hated him 'because he was white.'" ECF No. 70 at 9 (citations omitted). Detective Tart clarified, however, that his statements were regarding people who were "actively rioting" and "cussing at [him]." Tart Dep. 41:24–43:14, ECF No. 57-1 at 268–70. Here, there is no indication Perkins swore at Detective Tart and she denies actively rioting at any point in time. ECF No. 70 at 10. Perkins also asserts that Detective Tart testified that "a person coming towards him, but not threatening or directing anything at him verbally or physically is not a threat." ECF No. 70 at 9 (citing ECF No. 64-2 ¶ 12 (citing Tart Dep. 41:13–42:3, ECF No. 57-1 at 268–69)). Contrary to Perkin's assertion, Detective Tart testified that a person "outside of their vehicle" who "did not direct anything towards [him] or cuss at [him]," and who "*wouldn't* have been coming towards [him]" was "not a threat." Tart Dep. 41:13–42:3, ECF No. 57-1 at 268–69 (emphasis added). Perkins was walking towards Detective Tart and the Bearcat moments before being struck by the impact round. Hunter Dashcam 56:40–45, ECF No. 57-1 at 653.

Finally, Perkins argues the fact Detective Tart deployed less-lethal munitions towards a separate individual immediately before and after striking Perkins with the impact round demonstrates Detective Tart intended to harm her. ECF No. 70 at 10 (citations omitted). Specifically, Perkins asserts Detective Tart deployed tear gas against a protestor immediately prior to striking her with the impact round then deployed an impact round against the same protestor a minute later. *Id.* (citations omitted). As noted by Perkins, the protestor was standing in the

grass adjacent to the mall parking lot at the time Detective Tart deployed the less-lethal munitions. *Id.* at 10 (citing ECF No. 64-2 ¶ 16). That Detective Tart deployed less-lethal munitions against a protestor standing adjacent to the parking lot—a parking lot for which dispersal orders had been issued—does not itself indicate Detective Tart intended to harm the protestor, or that he intended to harm Perkins. ECF No. 57 ¶ 32; ECF No. 64–1 ¶ 32.

The Court therefore finds Perkins fails to set forth evidence raising a genuine issue as to whether Detective Tart was so "inspired by malice or sadism" in striking Perkins with the impact round that his conduct "amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Truong*, 829 F.3d at 631 (internal quotation marks and citations omitted). Accordingly, Perkins's Fourteenth Amendment excessive force and substantive due process claims fail as a matter of law.

d.    Qualified immunity

Detective Tart asserts that even if he did violate Perkins's rights under the Fourteenth Amendment by striking her with an impact round, he is entitled to qualified immunity as it was not clearly established that his conduct shocks the conscience. ECF No. 60 at 20. Perkins resists, arguing "[t]he absence of a factually similar case does not guarantee government officials the shield of qualified immunity, especially in the substantive due process context." ECF No. 70 at 13 (quoting *Moran v. Clark*, 359 F.3d 1058, 1060 (8th Cir. 2004)).

The Court finds Detective Tart is entitled to qualified immunity on Perkins's Fourteenth Amendment claims because he did not have fair warning that his conduct shocked the conscience. *Cf. Quraishi*, 986 F.3d at 835. Perkins fails to cite any factually similar precedent, controlling authority, or robust consensus of persuasive authority demonstrating Detective Tart's conduct shocked the conscience. *See* ECF No. 70 at 13. As noted by Perkins, the Eighth Circuit has held the absence of a factually similar case does not guarantee officials will be entitled to qualified

immunity, especially in the substantive due process context. *See Moran*, 359 F.3d at 1060 (citing *Hawkins v. Holloway*, 316 F.3d 777, 788 (8th Cir. 2003)). However, in those instances in which the Eighth Circuit has found a factually similar case is not needed to establish the officer's conduct violated the plaintiff's constitutional rights, the officer's "alleged conduct was so far beyond the bounds of the performance of his official duties that the rationale underlying qualified immunity is inapplicable." *Hawkins*, 316 F.3d at 788; *see also Moran*, 359 F.3d at 1060 ("When government officials engage in conscious-shocking, egregious behavior that is clearly outside the scope of their discretionary authority, they are not entitled to qualified immunity.").

Here, Detective Tart's conduct was not so far beyond the bounds of his official duties or clearly outside the scope of his discretionary authority, such that he should have been on notice he was violating Perkin's rights under the Fourteenth Amendment. *Cf. Hawkins*, 316 F.3d at 788; *Moran*, 359 F.3d at 1060. Detective Tart had been instructed to clear the mall parking lot and authorized to use less-lethal force. ECF No. 57 ¶¶ 30–32; ECF No. 64-1 ¶¶ 30–32. Protestors were still present in the parking lot and across the street shortly before Perkins was struck with the impact round. *See* Ward Dashcam 1:00:00–1:01:07, ECF No. 57-1 at 656; ECF No. 57 ¶ 48; ECF No. 64-1 ¶ 48. Perkins in turn was walking in the street amid traffic in the lane adjacent to the mall parking lot when Detective Tart struck her with a single, less-lethal impact round. Hunter Dashcam 56:40–45, ECF No. 57-1 at 653; Perkins Dep. 111:7–18, ECF No. 57-1 at 103; ECF No. 57 ¶ 111; ECF No. 64-1 ¶ 111. Such evidence fails to demonstrate Detective Tart's conduct was so far beyond the scope of his official duties that he was on notice that he was violating Perkins's rights under the Fourteenth Amendment. *Cf. Hawkins*, 316 F.3d at 788. Because Perkins fails to cite any factually similar precedent or authority and Detective Tart's actions were not beyond the scope of his duties such that it was clear his conduct violated Perkins's rights under the Fourteenth Amendment, the Court finds Detective Tart is entitled to qualified immunity on Perkins's

Fourteenth Amendment claims. *Cf. Quraishi*, 986 F.3d at 835; *Hawkins*, 316 F.3d at 788; *Moran*, 359 F.3d at 1060.

Accordingly, because Detective Tart's conduct did not shock the conscience and he is otherwise entitled to qualified immunity, the Court grants Detective Tart's motion for summary judgment as to Perkins's Fourteenth Amendment excessive force and substantive due process claims. *Cf. Lewis*, 523 U.S. at 846–47; *Dundon*, 85 F.4th at 1257

       3.     Failure to Intervene Claim against Sergeant Nydam and Officer Newman

Perkins alleges Sergeant Nydam and Officer Newman violated her rights under the Fourth Amendment by failing to intervene to stop Detective Tart from firing the impact round that struck her. ECF No. 8 ¶¶ 89–99. Sergeant Nydam and Officer Newman move for summary judgment, arguing they cannot be held liable for a failure to intervene absent an underlying constitutional violation by Detective Tart. ECF No. 61 at 15 (citing *Hall v. City of St. Louis*, 465 F.Supp.3d 937, 951 (E.D. Mo. 2020)); *id.* at 25–26. They argue summary judgment is also warranted because even if Detective Tart used excessive force, they had no reason to believe he would do so and did not have the opportunity to stop him. *Id.* at 26–27 (asserting they were unaware of Perkins's presence). Perkins resists. *See* ECF No. 69 at 17–18.

"To prevail on a claim of failure to intervene . . . , [a plaintiff] must prove an underlying constitutional violation." *Bloodworth v. Kansas City Bd. of Police Comm'rs*, 89 F.4th 614, 628 (8th Cir. 2023) (citing *Zubrod v. Hock*, 907 F.3d 568, 580 (8th Cir. 2018); *Malone v. Hinman*, 847 F.3d 949, 955–56 (8th Cir. 2017), *cert. denied* 583 U.S. 870 (2017)). "[A] failure-to-intervene claim may not prevail in the absence of a showing of excessive force." *Zubrod*, 907 F.3d at 580; *see also McManemy v. Tierney*, 970 F.3d 1034, 1039 (8th Cir. 2020) ("To be sure, an officer who fails to intervene to prevent the *unconstitutional* use of *excessive* force by another officer may be held liable for violating the Fourth Amendment. But there is no duty to prevent the *constitutional*

use of *reasonable* force." (emphasis in original) (internal quotation marks and citations omitted));

*Bloodworth*, 89 F.4th at 628 n.5 ("[T]here is no clearly established law regarding a duty to

intervene outside of the excessive force context." (quoting *Andrews v. Schafer*, 888 F.3d 981, 984

n.4 (8th Cir. 2018)); *cf. Johnson v. City of Ferguson, Missouri*, 926 F.3d 504, 507 (8th Cir. 2019)

(en banc) ("In light of our holding that no seizure and thus no constitutional violation occurred

in this case, Johnson's claim of supervisor liability against Chief Jackson necessary fails."). 

Here, the Court has found Perkins's excessive force and substantive due process claims against

Detective Tart fail as a matter of law. *See supra* Sections IV.A.1.a, 2.c. Absent an underlying

constitutional violation by Detective Tart, Perkins's failure-to-intervene claim against Sergeant

Nydam and Officer Newman also fails as a matter of law. *Cf. Bloodworth*, 89 F.4th at 628; *Zubrod*,

907 F.3d at 580; *Johnson*, 926 F.3d at 507.

Accordingly, the Court grants Sergeant Nydam and Officer Newman's motion for summary

judgment as to Perkins's failure-to-intervene claim.

#### 4.    *Monell* Claim against the City of Des Moines and Chief Wingert

Perkins alleges a *Monell* liability claim against the City of Des Moines and Chief Wingert

based upon the actions of Detective Tart and Officer Newman. ECF No. 8 ¶¶ 46–58 ("[Detective]

Tart's actions and/or omissions were made under the color of authority and law as a Deputy of

the Polk County Sheriff's Office, under the supervision of Officer Newman, an officer of the

Des Moines City Police Department."). The City of Des Moines and Chief Wingert move

for summary judgment, arguing Perkins's *Monell* liability claim cannot proceed absent an

underlying constitutional violation. ECF No. 61 at 27 (citing *Brockinton v. City of Sherwood,

Ark.*, 503 F.3d 667, 674 (8th Cir. 2007)). Perkins has failed to respond to that portion of

Defendants' motion for summary judgment regarding her *Monell* liability claim. *See generally*

ECF No. 69 (failing to mention *Monell* liability or any wrongful conduct by the City of Des Moines

or Chief Wingert); *see also* Defs.' Reply Br. Supp. Mot. Summ. J. 5, ECF No. 75 (arguing Perkins has failed to address the City of Des Moines and Chief Wingert's motion as to the *Monell* liability claim thereby conceding the issue).

Local Rule 56(b) states, "A party resisting a motion for summary judgment must . . . file . . . [a] brief that conforms with the requirements of Local Rule 7(e) in which the resisting party responds to each of the grounds asserted in the motion for summary judgment." "If no timely resistance to a motion for summary judgment is filed, the motion may be granted without prior notice from the court." LR 56(c). Here, neither Perkins's Resistance to Defendants' Motions for Summary Judgment nor her brief in support reference her *Monell* liability claim. *See generally* ECF No. 64; ECF No. 69. The City of Des Moines and Chief Wingert are therefore entitled to summary judgment on Perkins's *Monell* liability claim on this basis alone. *See Samide v. Titan Int'l, Inc.*, 208 F.Supp.2d 1005, 1009 (S.D. Iowa 2002) (granting summary judgment on the plaintiff's ERISA claim because the plaintiff failed to file a resistance to that claim); *C. Line, Inc. v. City of Davenport*, 957 F.Supp.2d 1012, 1032 (S.D. Iowa 2013) ("[S]ummary judgment in favor of Defendants is warranted based solely on [Plaintiff's] failure to resist Defendants' Motion for Summary Judgment on the takings and substantive due process claims.").

Furthermore, "[w]ithout a constitutional violation by the individual officers, there can be no § 1983 or *Monell* . . . liability." *Stockley v. Joyce*, 963 F.3d 809, 823 (8th Cir. 2020) (omission in original) (quoting *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007)). "This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *Johnson*, 926 F.3d at 506; *see Whitney v. City of St. Louis*, 887 F.3d 857, 860–61 (8th Cir. 2018) (collecting cases). Because the Court has found summary judgment is warranted on each of Perkins's federal constitutional claims against Detective Tart and Officer Newman, *see supra* Sections IV.A.1.a,

A.2.c, A.3, summary judgment is warranted on Perkins's *Monell* liability claim for this reason as well. *Cf. Stockley*, 963 F.3d at 832; *Johnson*, 926 F.3d at 506–07.

Accordingly, the Court grants the City of Des Moines and Chief Wingert's motion for summary judgment as to Perkins's *Monell* liability claim.

### B.    State Claims

Perkins alleges four claims under Iowa law, including an excessive force claim under article I, section 8 of the Iowa Constitution against Detective Tart (Count II), a substantive due process claim under article I, section 9 of the Iowa Constitution against Detective Tart (Count VII), a state common law claim for negligent hiring, training, and supervision against the City of Des Moines and Chief Wingert (Count IV), and a common law respondeat superior claim against the City of Des Moines and Chief Wingert (Count V). ECF No. 8 ¶¶ 37–45, 59–73, 82–99. Detective Tart moves for summary judgment on Perkins's state constitutional claims. ECF No. 60 at 20–28. Perkins resists. ECF No. 70 at 17–30. The City of Des Moines and Chief Wingert move for summary judgment on Perkins's negligent hiring, training, and supervision claim and respondeat superior claim. ECF No. 61 at 14–15, 28–29. Perkins has failed to resist that portion of the City of Des Moines and Chief Wingert's motion for summary judgment regarding these claims. *See generally* ECF No. 64; ECF No. 69.

Because the Court has granted Defendants' motions for summary judgment as to each of Perkins's claims under federal law, the Court first addresses whether to exercise supplemental jurisdiction over the remaining state law claims. Finding it appropriate to exercise supplemental jurisdiction in this case, the Court next addresses Perkins's claims against Detective Tart. The Court then addresses the claims against the City of Des Moines and Chief Wingert. For the reasons set forth below, the Court grants Defendants' motions as to each of Perkins's state law claims.

1.    Supplemental Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Court has found Defendants are entitled to summary judgment on each of Perkins's federal law claims—the only claims over which the Court has original jurisdiction. *See supra* Section IV.A; 28 U.S.C. § 1367(c). Accordingly, the Court has discretion whether to exercise supplemental jurisdiction over the remaining state law claims. See *Zubrod*, 907 F.3d at 580 ("A district court [that] has dismissed all claims over which it has original jurisdiction may decline to exercise supplemental jurisdiction." (alteration in original) (internal quotation marks omitted) (quoting 28 U.S.C. § 1367(c)(3))). In determining how to exercise its discretion, the Court considers "the stage at which the federal claims were disposed of, 'the difficulty of the state claim, the amount of judicial time and energy already invested in it, the amount of additional time and energy necessary for its resolution, and the availability of a state forum.'" *Marshall v. Green Giant Co.*, 942 F.2d 539, 549 (8th Cir. 1991) (quoting *Koke v. Stifel, Nicolaus & Co., Inc.*, 620 F.2d 1340, 1346 (8th Cir. 1980)). Because Perkins's federal law claims have been dismissed at the summary judgment stage, the Court and parties have invested significant time and energy into the case, and the amount of additional time and energy necessary for the resolution of the matters is minimal, the Court finds it appropriate to exercise supplemental jurisdiction over the remaining state law claims. *Cf. id.*

2.    State Constitutional Claims against Detective Tart

Perkins alleges an excessive force claim under article I, section 8 of the Iowa Constitution against Detective Tart. ECF No. 8 ¶¶ 37–45. She also alleges a substantive due process claim under article I, section 9 of the Iowa Constitution against Detective Tart. *Id.* ¶¶ 82–88. Detective Tart moves for summary judgment on both claims. ECF No. 60 at 20–28. Perkins resists. ECF No. 70 at 17–30.

Perkins's state constitutional claims are premised on *Godfrey v. State*, in which the Iowa Supreme Court recognized a standalone cause of action for money damages under those provisions of the Iowa Constitution that are self-executing. *See* 898 N.W.2d 844, 862 (Iowa 2017); ECF No. 70 at 19–21 (asserting Article I, Sections 8 and 9 are self-executing (citing *Godfrey*, 898 N.W.2d at 870)). Subsequent to the filing of Detective Tart's motion for summary judgment, the Iowa Supreme Court overruled *Godfrey* and declined to recognize a constitutional tort claim under article I, section 8 of the Iowa Constitution. *See Burnett v. Smith*, 990 N.W.2d 289, 307 (Iowa 2023) ("[W]e hold that *Godfrey* should be overruled, and we no longer recognize a standalone cause of action for money damages under the Iowa Constitution unless authorized by common law, an Iowa statute, or the express terms of a provision of the Iowa Constitution."). Citing *Burnett*, the Iowa Supreme Court has also declined to recognize a constitutional tort claim under article I, section 9 of the Iowa Constitution. *See Venckus v. City of Iowa City*, 990 N.W.2d 800, 812 (Iowa 2023) (citing *Burnett*, 990 N.W.2d at 292–307); *see also Dishman v. State*, No. 22-1491, 2023 WL 8068563, at *3 (Iowa Ct. App. Nov. 21, 2023) (finding *Burnett* applies retroactively). *Burnett* and *Venckus* are controlling.

Accordingly, the Court grants Detective Tart's motion for summary judgment as to Perkins's claims under article I, section 8 and article I, section 9 of the Iowa Constitution.

3.    Negligent Hiring, Training, and Supervision Claim against the City of Des Moines and Chief Wingert

Perkins alleges a common law claim for negligent hiring, training, and supervision against the City of Des Moines and Chief Wingert. ECF No. 8 ¶¶ 59–67. She alleges Chief Wingert was responsible for training and supervising Sergeant Nydam and Officer Newman, who were in turn responsible for training and supervising Detective Tart on the date of the incident. *Id.* ¶ 61. Perkins alleges the City of Des Moines and Chief Wingert "knew or should have known of

[Detective] Tart's dangerous proclivities and the threat of injury he[] posed in effectuating his[] duties." *Id.* ¶ 63.

The City of Des Moines and Chief Wingert move for summary judgment, arguing Perkins has failed to show any underlying tortious conduct for which they can be held liable. ECF No. 61 at 14–15, 28–29. Perkins has failed to respond to that portion of the City of Des Moines and Chief Wingert's motion for summary judgment regarding her negligent hiring, training, and supervision claim. ECF No. 64; ECF No. 69 (failing to mention the negligent hiring, training, and supervision claim or any wrongful conduct by the City of Des Moines or Chief Wingert); *see also* ECF No. 75 at 5 (arguing Perkins has conceded the City of Des Moines and Chief Wingert are entitled to summary judgment because Perkins has failed to file a resistance). Summary judgment is warranted on this basis alone. LR 56(b)–(c); *Samide*, 208 F.Supp.2d at 1009; *C. Line, Inc.*, 957 F.Supp.2d at 1032.

Summary judgment is also warranted because Perkins has failed to set forth an underlying tort or wrongful act by Detective Tart, Sergeant Nydam, or Officer Newman. To proceed on a claim for negligent hiring, training, or supervision, "an injured party must show the employee's underlying tort or wrongful act caused a compensable injury, in addition to proving the negligent hiring, supervision, or retention by the employer was a cause of these injuries. In other words, the injured party must prove a case within a case." *Kiesau v. Bantz*, 686 N.W.2d 164, 172 (Iowa 2004), *overruled on other ground by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016). To do so, a plaintiff "must include as an element an underlying tort or wrongful act committed by the employee." *Shoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 53 (Iowa 1999) (citation omitted).

Here, the Court has granted summary judgment on each of Perkins's constitutional claims against Detective Tart, Sergeant Nydam, and Officer Newman. *See supra* Sections IV.A.1, A.2, A.3, B.2. Perkins has otherwise failed to set forth any underlying tort or wrongful act by the

officers. *See generally* ECF No. 8. Absent an underlying tort or wrongful act by the officers, the City of Des Moines and Chief Wingert are entitled to summary judgment on Perkins's negligent hiring, training, and supervision claim for this reason as well. *Cf. Shoff*, 604 N.W.2d at 53; *Struck v. Mercy Health Services-Iowa Corp.*, 973 N.W.2d 533, 540–41, 544 (Iowa 2022) (dismissing the plaintiff's negligent hiring, training, and supervision claim against the employer at the motion to dismiss stage because the only underlying claim asserted against the employee was dismissed and the plaintiff failed to allege any other claims against the employee).

Accordingly, the Court grants the City of Des Moines and Chief Wingert's motion for summary judgment as to Perkins's negligent hiring, training, and supervision claim.

4.    Respondeat Superior Claim against the City of Des Moines and Chief Wingert

Perkins alleges a respondeat superior claim against the City of Des Moines and Chief Wingert, asserting they "are liable for the actions of [Detective] Tart, Officer Newman, and [Sergeant] Nydam." ECF No. 8 ¶¶ 68–73. The City of Des Moines and Chief Wingert move for summary judgment. ECF No. 61 at 14–15, 29. Perkins has failed to file a resistance to that portion of the City of Des Moines and Chief Wingert's motion for summary judgment regarding her respondeat superior claim. *See generally* ECF No. 64; ECF No. 69 (failing to mention respondeat superior or setting forth any evidence or arguments in support of the claim). Summary judgment is warranted on this basis alone. LR 56(b)–(c); *Samide*, 208 F.Supp.2d at 1009; *C. Line, Inc.*, 957 F.Supp.2d at 1032. Furthermore, "[a] plaintiff must establish the agent's negligence to recover against the principal under respondeat superior." *Hook v. Trevino*, 839 N.W.2d 434, 441 (Iowa 2013). Here, Perkins has failed to provide any evidence or argument that Detective Tart's, Sergeant Nydam's, or Officer Newman's conduct was negligent.

Accordingly, the Court grants the City of Des Moines and Chief Wingert's motion for

summary judgment as to Perkins's respondeat superior claim.

## V.    CONCLUSION

Defendants are entitled to summary judgment on each of Perkins's federal claims. Detective Tart is entitled to summary judgment on Perkins's Fourth Amendment and Fourteenth Amendment excessive force and substantive due process claims because Perkins was never seized, Detective Tart's conduct does not shock the conscience, and Detective Tart is otherwise entitled to qualified immunity. Sergeant Nydam and Officer Newman are entitled to summary judgment on Perkins's failure-to-intervene claim because absent an underlying constitutional violation by Detective Tart, they cannot be held liable for a failure to intervene. The City of Des Moines and Chief Wingert are entitled to summary judgment on Perkins's *Monell* liability claim because she has failed to file a resistance and she cannot maintain a *Monell* liability claim absent an underlying constitutional violation.

Defendants are also entitled to summary judgment on each of Perkins's state law claims. Detective Tart is entitled to summary judgment on Perkins's claims under the Iowa Constitution as the Iowa Supreme Court no longer recognizes a standalone cause of action for money damages under the Iowa Constitution. The City of Des Moines and Chief Wingert are entitled to Perkins's common law claim for negligent hiring, training, and supervision as she has failed to file a resistance and has otherwise failed to set forth an underlying tort or wrongful act by the individual officers. The City of Des Moines and Chief Wingert are also entitled to summary judgment on Perkins's respondeat superior claim as Perkins has failed to file a resistance or set forth any evidence or argument demonstrating the individual officers engaged in tortious or wrongful conduct.

Accordingly, **IT IS ORDERED** that Defendant Jason Tart's Motion for Summary Judgment, ECF No. 53, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants City of Des Moines, Iowa, Dana Wingert, Rodell Nydam, and Scott Newman's Motion for Summary Judgment, ECF No. 55, is **GRANTED**.

**IT IS SO ORDERED.**

Dated on this 22nd day of January, 2024.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE